IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ASHLEY SUMMERS )
 )
   v. ) NO. 3:13-0439
 )
FIRST STATE BANK )

TO: Honorable Todd J. Campbell, District Judge

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered April 11, 2014 (Docket Entry No. 65), the Court referred the Defendant's Motion for Summary Judgment (Docket No. 58) to the Magistrate Judge for a report and recommendation. For the reasons set out below, the Court recommends that the motion for summary judgment be granted and this action be dismissed.

### I. BACKGROUND

The plaintiff, Ashley Summers, is a blind woman. She alleges that, at some time after March 15, 2012, she visited an automatic teller machine ("ATM") operated by First State Bank ("First State") and located at its branch at 300 Northcreek Boulevard in Goodlettsville, Tennessee, but was unable to use this ATM ("the Goodlettsville ATM") because it did not have voice-guidance features, did not have Braille instructions for initiating the ATM's speech mode, and did not have "the proper tactile symbols" on the function keys. See Complaint (Docket Entry No. 1), at 9, ¶¶ 38-40. The plaintiff contends that these features are necessary for her to independently use an ATM.

Although the plaintiff is a resident of Alabama, she asserts that the Goodlettsville ATM is within the geographic zone she typically travels as part of her regular activities because it is near the home of her long term boyfriend. The Goodlettsville ATM is the only one of the Defendant's ATMs that the plaintiff alleges she personally attempted to use.

On May 9, 2013, the plaintiff filed this lawsuit against First State, a bank organized under the laws of the State of Tennessee with more than 44 ATMs located across Tennessee. The lawsuit was filed as a putative class action alleging that the Defendant violated Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12101 et seq. The plaintiff alleges that the Goodlettsville ATM and "some of Defendant's ATMs" do not comply with the ADA and its implementing regulations, known as the 2010 Standards for Accessible Design (the "2010 Standards"), because the ATMs lack functional voice guidance and suffer from a "myriad [of] additional violations of Section 7 of the 2010 Standards." See Complaint at 8, ¶ 36. The plaintiff contends that, in the absence of the features required by the 2010 Standards, the Defendant's ATMs are not fully accessible to, and independently usable by, blind individuals. The plaintiff further alleges that the Defendant does not have an institutional policy that is reasonably calculated to ensure that its ATMs are ADA compliant. Id. at ¶ 37. The plaintiff seeks injunctive relief requiring the Defendant to update or replace its ATMs so that they are fully accessible to, and independently usable by, blind individuals. The plaintiff also seeks declaratory relief and the continued supervision of the Court to ensure the Defendant's compliance with the ADA and the 2010 Standards.

Case management and discovery have occurred in the action. See Docket Entry Nos. 14-16, 21, and 64. Although the plaintiff filed her lawsuit as a putative class action, she did not move for class certification prior to the expiration of the April 22, 2014, deadline for filing a motion for class

certification. The action is currently set for a jury trial on February 10, 2015. See Order entered August 21, 2014 (Docket Entry No. 83).

On January 19, 2014, the Defendant filed a motion to dismiss (Docket Entry No. 24) contending that it had remedied the asserted violations at the Goodlettsville ATM, had completed its efforts to make all of its ATMs compliant with the 2010 Standards, and had in place a policy of monthly ATM inspections to ensure ongoing compliance with the 2010 Standards. Therefore, the Defendant argued that there was no case or controversy and that the action should be dismissed for lack of subject-matter jurisdiction. Because both parties submitted declarations of fact in support of their positions on the motion to dismiss and because the Defendant had filed the pending motion for summary judgment (Docket Entry No. 58) prior to a decision on the motion to dismiss, the Court denied the motion to dismiss and reserved the issues raised by the parties for resolution of the motion for summary judgment. See Order entered April 11, 2014 (Docket Entry No. 65).

## II. MOTION FOR SUMMARY JUDGMENT

The Defendant's motion for summary judgment echoes the argument for dismissal raised in its prior motion to dismiss, i.e., that the Court lacks subject matter jurisdiction because there is no longer any actual case or controversy in this action. The Defendant contends that the undisputed evidence before the Court shows: 1) that it upgraded, or "retrofitted," the Goodlettsville ATM to make it adhere to the 2010 Standards; 2) that it has completed efforts, begun well prior to the filing of the instant lawsuit and at a cost of $397,558.32, to make all of its ATMs compliant with the 2010 Standards; and 3) that it has a written ADA-compliance policy and program in place, has its Card Programs Manager oversee ADA compliance, and conducts monthly checks of every ATM to ensure

3

ADA compliance. The Defendant argues that there is no evidence of current ADA violations regarding its ATMs and there is no evidence showing a credible threat of future violations. The Defendant contends that the plaintiff's claims for injunctive relief have become moot.

In support of its motion, the Defendant relies on its Statement of Undisputed Material Facts (Docket Entry No. 60), the third Declaration of April Black (Docket Entry No. 61), the Declaration of Daryl Hight (Docket Entry No. 62), excerpts from the Deposition of Trevor Heck (Docket Entry No. 60-1), and several declarations that were submitted in support of its prior motion to dismiss: first Declaration of April Black (Docket Entry No. 26); Declaration of Thor Sanchez (Docket Entry No. 27); second Declaration of April Black (Docket Entry No. 35); Declaration of Amy Caudill (Docket Entry No. 36); Declaration of Jennifer Akins (Docket Entry No. 37); Declaration of Charles McClain (Docket Entry No. 38); second Declaration of Thor Sanchez (Docket Entry No. 39), and Declaration of Rodney Crowder (Docket Entry No. 40).

In her response (Docket Entry No. 68), the plaintiff contends that the Defendant's factual argument that its ATM network is in compliance with the 2010 Standards fails to support summary judgment because: 1) an investigation of the Defendant's ATMs conducted on behalf of the plaintiff by Trevor Heck on or about January 31, 2014, revealed that 12 of the Defendant's ATMs did not comply with the 2010 Standards; and 2) there is no evidence that Defendant has an effective policy or plan in place to prevent noncompliance in the future. The plaintiff argues that the Defendant falls far short of meeting its significant burden of demonstrating that the accessibility problems with the Defendant's ATMs cannot reasonably be expected to recur in the future and has not established that these interim events have completely and irrevocably eradicated the effects of the Defendant's ADA violations. Therefore, the plaintiff argues that the action is not moot. In support of her response, the

4

plaintiff relies upon the Declaration of Trevor Heck (Docket Entry No. 32-1), which was originally submitted by the plaintiff in opposition to the Defendant's motion to dismiss, and her own Statement of Undisputed Material Facts (Docket Entry No. 67).

In its reply (Docket Entry No. 72), the Defendant asserts that the plaintiff has not disputed significant evidence of the Defendant's compliance with the 2010 Standards. The Defendant further contends that the Declaration of Trevor Heck fails to raise factual questions that require the denial of summary judgment because: 1) the Declaration should not be considered by the Court and is inadmissable;[1] and 2) even if considered, the Declaration fails to provide evidence of a continuing and ongoing controversy about whether the Defendant is complying with the 2010 Standards regarding its ATMs.

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[1] The Defendant has filed three motions to strike the Declaration of Trevor Heck (Docket Nos. 41, 43, and 77). By contemporaneously entered order, the Court has denied the first two motions to strike (Docket Entry Nos. 41 and 43). The Court recommends that the third motion to strike (Docket Entry No. 77) be denied for similar reasons as set out in that order. The Court is able to assess any deficiencies that may exist with respect to the Declaration in determining the relative merit and persuasiveness to give to the content of the Declaration without the need to take the step of striking the Declaration.

248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871,

888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. ANALYSIS

The Defendant's argument for dismissal of this action has merit. Article III of the United States Constitution mandates that the Court has jurisdiction to hear only actual, ongoing cases or controversies between the parties which can be remedied by the Court. See Lewis v. Continental Bank Corp., 494 U.S. 472, 478 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). This is "a cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there," and events occurring during the case may require dismissal of the case as moot. Fialka-Feldman v. Oakland Univ. Bd. of Trustees, 639 F.3d 711, 713 (6th Cir. 2011); Berger v. Cuyahoga Cnty. Bar Ass'n, 983 F.2d 718, 724 (6th Cir. 1993). In other words, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). See also Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio, 503 F.3d 456, 460 (6th Cir. 2007); Carras v. Williams, 807 F.2d 1286, 1289 (6th Cir. 1986). Although an actual case or controversy may exist at the time a lawsuit is filed, subsequent developments in a case may cause the case to become moot. Midwest Media, 503 F.3d at 461.

The Defendant has made a persuasive showing that there is no longer any actual controversy concerning whether its ATMs comply with the 2010 Standards. The Defendant has set forth

evidence that it remedied the issues with the Goodlettsville ATM that the plaintiff actually visited. See Statement of Undisputed Material Facts (Docket Entry No. 60), at ¶¶ 30-31 and 33-35. The Defendant has further submitted substantial evidence of its overall efforts to bring all of its ATMs into, and keep them in, compliance with the 2010 Standards. It has set forth evidence that, prior to the 2010 Standards going into effect, it initiated, at a considerable cost, a comprehensive program to bring its ATMs into compliance with the 2010 Standards by either upgrading older ATMs or purchasing new replacement ATMs that are complaint with the 2010 Standards, id. at ¶¶ 1-19, 36-37, and 57-58, that it purchases only ATMs that are compliant with the 2010 Standards, id. at ¶ 8, that it has a written policy in place, which includes monthly compliance checks of all ATMs, to ensure continuing compliance with the 2010 Standards, id. at ¶¶ 20-29, and that, in accordance with this policy, steps are promptly taken to remedy compliance issues at ATMs when they are discovered. Id. at ¶¶ 32-35 and 38-56.

For the most part, the plaintiff either admits, does not dispute, or provides no evidence to dispute the Defendant's evidence. See Plaintiff's Response to Statement of Undisputed Material Facts (Docket Entry No. 66). However, based upon the Declaration of Trevor Heck, the plaintiff nonetheless asserts that not all of the Defendant's ATMs currently comply with the 2010 Standards and thus the plaintiff disagrees that the Defendant's program to ensure compliance with the 2010 Standards is adequate and effective. See Plaintiff's Response in Opposition (Docket Entry No. 68), at 3. The plaintiff argues that this evidence shows that the action has not become moot and that there is a reasonable expectation that the Defendant's ATMs will not comply with the 2010 Standards in the future. Id.

The plaintiff's argument fails to support the denial of the motion for summary judgment. A close review of the Heck Declaration, which is submitted as only the declaration of a lay witness, reveals that it is insufficient to support the plaintiff's position. The plaintiff simply fails to support her rebuttal to the motion for summary judgment with any evidence that a continuing case or controversy exists in this action. In his Declaration, Heck lists ten ATMs as non-complaint with the 2010 Standards solely because "the input keys do not have the correct tactile symbols," see Docket Entry No. 32-1, at ¶¶ 7-16, and one ATM as having this issue, as well as an issue with the audio guidance feature. Id. at ¶ 5. In his deposition, he clarified that he had observed that the 11 ATMs had a tactile symbol on the clear key that consisted of raised vertical bars instead of a raised left arrow. See Docket Entry No. 60-1, at 26-27. However, the Defendant sets forth evidence that the lack of a raised left arrow tactile key does not constitute non-compliance on these 11 ATMs because the ATMs were installed prior to the March 15, 2012, effective date of the 2010 Standards and they complied with the prior 1991 Standards and thus are within the safe harbor provision of the 2010 Standards and are considered "grandfathered." See Docket Entry No. 60, at ¶¶ 16 and 36. See also Defendant's Memorandum in Support (Docket Entry No. 59), at 18-19. The plaintiff has not disputed this evidence. Accordingly, Heck's Declaration concerning tactile symbols on these 11 ATMs does not support the plaintiff's assertion that the Defendant's ATMs currently violate the 2010 Standards.

The only remaining evidence presented by the plaintiff is Heck's declaration that an ATM located in Union City and an ATM located in Hendersonville had audio guidance features that did not function or did not function properly on January 31, 2014, when Heck visited the two ATMs. See Docket Entry No. 32-1, at ¶¶ 5 & 6. However, the Defendant has submitted evidence that both

ATMs had been checked earlier in January 2014, and the audio guidance features were determined to be functioning properly at that time, see Docket Entry No. 60, at ¶¶ 38 and 44, and evidence that, subsequent to January 31, 2014, both ATMs were repeatedly checked by the Defendant's employees and by service technicians and the audio guidance features were found to be properly functioning. Id. at ¶¶ 39-43 and 45-49. The plaintiff has not disputed this evidence or submitted any other evidence which would call into question the Defendant's supporting evidence. The plaintiff's limited evidence that two ATMs had non-functioning features on a single day, when viewed in light of the Defendant's substantial evidence of compliance and monitoring efforts for its 44 ATMs, is insufficient to support her assertion that the Defendant's ATMs are currently non-compliant or that the Defendant has an ineffective system of ensuring ongoing compliance. As the Court found in another ATM case filed in this District that was similarly dismissed as moot:

> the regulations recognize that breakdowns and malfunctions may occur. See 28 C.F.R. § 36.211(b) (the public accommodation provisions of the ADA "do[] not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs"). And courts recognize that companies must be given a reasonable opportunity to address such intermittent problems. See Foley v. City of Lafayette, 359 F.3d 925, 930 (7th Cir. 2004) (noting that under ADA regulations governing transportation services "occasional . . . malfunctions, unaccompanied by systemic problems of poor maintenance policy or frequent denials of access, do not constitute violations"); Thill v. Olmstead Cnty., 2010 WL 3385234, at *6 (D. Minn. Aug. 24, 2010) (quoting the Department of Justice ADA Technical Assistance Manual for the proposition that "[t]he ADA does not require covered entities to do the impossible. In particular, it does not punish covered entities for occasional and inevitable breakdowns in handicapped-accessible features. . .").

See Welchly v. First Bank, 2014 WL 2615808, *8 (M.D. Tenn. June 12, 2014) (Sharp, J.).

The Court is cognizant of the language in Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), that a "defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case," and the adoption of this

language by the Sixth Circuit in Akers v. McGinnis, 352 F.3d 1030 (6th Cir. 2003). However, both Laidlaw and Akers involved plaintiffs who sought more than just injunctive relief and who sought relief that was still within the power of the Court to grant even after the cessation of the alleged unlawful conduct. In the instant case, there is no relief that the Court can give to the plaintiff. Therefore, the instant case does not fall squarely within the holdings in Laidlaw and Akers.

Furthermore, the doctrine of mootness is satisfied when the subsequent events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 473 (6th Cir. 2008) (quoting Akers v. McGinnis, 352 F.3d 1030, 1035 (6th Cir. 2003)). The plaintiff has not set forth any basis other than pure speculation for a conclusion that the Defendant will not comply with the 2010 standards in the future and that she will likely suffer a future injury. Such speculation is not sufficient to create a need for prospective injunctive relief. See Nelson v. Miller, 570 F.3d 868, 882-83 (7th Cir. 2009).

Notwithstanding the heavy burden placed on a defendant to show that an actual case or controversy has become moot, several courts, including two in this District, have recently dismissed ATM accessibility cases on mootness grounds where the defendant has established that it corrected alleged compliance problems and implemented plans to ensure future compliance with the ADA and the 2010 Standards. See Welchly v. First Bank, supra; Welchly v. Cadence Bank, Inc., 2014 WL 271629 (M.D. Tenn. Jan. 23, 2014) (Trauger, J.); Scott v. Cash to Go, Inc., 2013 WL 1786640 (M.D. Fla. Apr. 26, 2013). It does not appear that there is any significant difference between those cases and the instant case, and the Court sees no reason to depart from the reasoning and outcomes in those cases. In the instant case, the only reasonable interpretation of the record before the Court demonstrates that the Defendant has remedied the violations at the single ATM that the plaintiff

actually visited, has made good-faith efforts to bring all of its ATMs into compliance with the 2010 Standards, and has taken concrete steps to ensure compliance in the future. Accordingly, the Court finds there is no longer a live case or controversy and this case is moot. Maintaining jurisdiction over the action to ensure future compliance is not warranted.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that:

1) the Defendant's motion (Docket Entry No. 77) to strike the declaration of Trevor Heck be DENIED; and

2) the Defendants' motion (Docket Entry No. 58) for summary judgment be GRANTED and this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.

See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

*Juliet Griffin*
JULIET GRIFFIN
United States Magistrate Judge